**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

IN RE:

DONNA AND OLIVER PARR                                              CASE NO. 13-50721

DEBTORS

L. CRAIG KENDRICK,
TRUSTEE IN BANKRUPTCY                                              PLAINTIFF

V.                                                                 ADVERSARY CASE NO. 14-5011

THE LAMAR COMPANY, LLC., et al.                                    DEFENDANTS

### MEMORANDUM OPINION

The sole issue before the Court is whether a lease to erect and maintain a billboard on commercial property is a lease of personal or real property.  Pursuant to a "Sign Lease," The Lamar Company, LLC ("Lamar"), an outdoor advertising company, displays billboards attached to a pole on Debtor's commercial real estate.  The Debtors' Chapter 7 Trustee, in his efforts to sell the property encumbered by the Sign Lease, brought this adversary proceeding, and now moves for summary judgment, to obtain a judgment declaring the lease rejected by operation of law, and ordering Lamar to remove its pole and billboards before the expiration of the lease's term.  Lamar, cross-moving for summary judgment, agrees that the lease is rejected but counters that the lease is a lease of real property, and that under § 365(h)(1) it therefore may retain its rights under the lease, even after rejection, if it so chooses.  For the reasons set forth below, Lamar's Motion will be granted.

### Facts and Procedural History

The following facts are undisputed.  On May 29, 1999, Randy Edrington, the predecessor owner of Debtor's real estate, executed a "Sign Lease" with Lockridge Outdoor Advertising

Agency, as lessee. The original term of the Sign Lease was for ten years, "beginning upon erection [of an advertising display]." [Doc. 19, Ex. A]. It leased "the premises known and described as follows: 450 Connector Rd., Georgetown, KY . . . for the purpose of construction, operation and maintenance of an outdoor advertising display." [*Id*.]. The Sign Lease was silent as to precisely where on the property the display would be located. The Sign Lease further provided that "all materials and displays placed upon the property by Lessee shall remain Lessee's property" [*id.*], and that the lessee could remove them at any time. The lessee had the right to terminate the lease in the event that posting its signs became illegal or unprofitable, or in the event that the view of its signs was obstructed. The lessor was given no right to terminate the agreement. After the expiration of the initial ten year term, the Lease would automatically renew for an additional five years unless terminated by the lessee; the lessor had no control of the five-year renewal. Finally, the agreement provided that it was assignable by either party and would be binding upon the successors and assigns of both.

In August 2000, Lockridge erected an advertising display on Edrington's property. The display consists of a steel "I-beam monopole," supporting a "four-poster panel structure." [Doc. 18-3 at 8.] The Trustee represents, and Lamar does not dispute, that the monopole stands in the back of a parking lot on Debtors' commercial property. Lockridge subsequently assigned its interests to DeLite Outdoor Advertising, LLC. In 2002, Lamar succeeded to DeLite's rights under the Sign Lease.

On May 17, 2006, an attorney for the Debtors wrote to Lamar to inform it that Debtors had purchased the property at 450 Connector Road. Debtors' counsel noted in her letter that the property was subject to the Sign Lease, and requested that future payments under the lease be sent to her clients. Several days later, Ryan Schneider, on behalf of Lamar, replied and agreed to

2

send payments to the Debtors, writing that "[a]s a result of this completed transaction, Lamar has become a 'tenant' on your land by virtue of the billboard on your property." [Doc. 18-4 at 2.] In 2010, the Sign Lease was renewed by Lamar for five years, until August 2015.

Debtors filed for chapter 7 bankruptcy relief on March 23, 2013. Their schedules list the property at 450 Connector Road, with a value of $700,000 and a mortgage with People's Exchange Bank of $671,851.92. Neither the Sign Lease, nor Lamar, is listed in the Debtors' schedules. In July 2013, the Trustee moved to sell the property under 11 U.S.C § 363. A bidding process resulted in a bid of $901,000 by defendant Frontier Development, LLC. The Court approved Frontier's bid on August 14, 2013. Five months later, People's Exchange Bank moved to vacate the order approving the high bid, and sought stay relief to foreclose. The Bank represented that Frontier refused to close because Lamar refused to remove its sign. The Court denied People's Exchange's motion to vacate and obtain stay relief, instead giving the Trustee an opportunity to either reach a settlement with Lamar or file an adversary proceeding addressing the Sign Lease. The Trustee chose the latter course, filing this adversary proceeding.

The Complaint seeks a declaratory judgment that the Sign Lease is rejected, and an order that Lamar remove "its personal property," i.e., the billboard display and all of its component parts, from Debtors' property. [Doc. 1 at 6.][1] Lamar's answer maintains that upon the Trustee's rejection of the Sign Lease, it could retain its rights under the Sign Lease under 11 U.S.C. § 365(h). Further, Lamar's answer contained a counterclaim, seeking a declaration that it retains its rights under § 365(h) upon rejection and a determination of the amount of rent it could offset.

---

[1] The Trustee's complaint originally named Debtors, Lamar, People's Exchange Bank, Frontier, and Lockridge as defendants. Debtors and Lockridge have been dismissed.

3

Alternatively, Lamar asserted claims for breach of contract and unjust enrichment in the event the Court determined Lamar could not retain its rights under the Sign Lease.[2]

The Trustee and Lamar filed motions for summary judgment [Docs. 18, 19], and responses to those motions [Docs. 21, 22]. The Court held a hearing on August 5, 2014, and took the motions under submission.

## Jurisdiction and Standard of Review

The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

Summary judgment is appropriate if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056 (incorporating by reference Fed. R. Civ. P. 56). The movant bears the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–87 (1986); *Provenzano v. LCI Holdings, Inc.,* 663 F.3d 806, 811 (6th Cir. 2011). The movant's burden can be met, however, not only by affirmatively negating the non-moving party's case, but by pointing to an absence of proof in the non-moving party's case. Rule 7056 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,*

---

[2] Lamar's answer also denied that this matter was core; at the hearing on the parties' motions for summary judgment, both parties agreed that this matter was core and consented to the Court entering final judgment.

477 U.S. 317, 322–23 (1986).

## Analysis

The Trustee's motion for summary judgment seeks two types of relief–a declaratory judgment that the Sign Lease be deemed rejected and injunctive relief ordering Lamar to remove its pole and signs from the Debtors' property. The parties agree that the Sign Lease is an unexpired lease and that the Sign Lease has been rejected; thus, the sole issue before the Court is whether the Sign Lease is a lease of real or personal property.[3]

The Trustee seeks a judgment ordering Lamar to vacate the Debtors' premises and remove its pole and sign. The Trustee argues that the Sign Lease is a lease of personal property, and that his requested relief necessarily flows from the rejection of a lease of personal property. Lamar, on the other hand, seeks a judgment declaring that it may elect to retain its rights under the Sign Lease until its expiration under § 365(h)(1)(A), because in its view the Sign Lease is a lease of real property and § 365(h)(1)(A) gives the lessee under a rejected lease of non-residential real property the right to retain its rights under the lease.

It is undisputed that Lamar owns, and is not leasing, the pole and advertising displays posted thereon–a point which the Sign Lease makes quite clear. It is also undisputed that Lamar has the possessory right to the land on which the display is erected, land which it does not own. Lamar takes the position that the land it is entitled to possess for the term of the Sign Lease is real property; in contrast, the Trustee puzzlingly takes the position that it is personal property. At oral argument, the Trustee explained that this was because Lamar was just leasing "space."

---

[3]The Trustee's motion for summary judgment argues that the lease has been rejected by operation of law pursuant to 11 U.S.C. § 365(d)(1). Section 365(d)(1), however, only addresses the rejection of leases of personal property or residential real property. The property in Georgetown is commercial property; therefore, § 365(d)(1) does not apply if the Court finds that the property that is the subject of the Sign Lease is real property. The Complaint herein, however, requests approval of the Trustee's rejection of the Sign Lease; thus, the Court will treat the request in the Trustee's Motion as an unopposed motion to reject the Sign Lease.

No legal authority was offered for the Trustee's distinction between "space" and real property.

Black's Law Dictionary defines real property as "land and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land." BLACK'S LAW DICTIONARY 1337 (9th ed. 2009); *accord* Ky. Rev. Stat. §§ 56. 440, 80.010, 92.410, 99.340, 132.010 (all defining real property for a variety of purposes as land and improvements thereon).  Whether described as land, or, as the Trustee would have it, "space" on land, Lamar is leasing land on which to maintain its advertising displays.  Under any definition of real property, that land is real property.

The Trustee's argument that the advertising display is a trade fixture (and not a real estate fixture), citing *Lamar Advantage GP Co., LLC v. Nighswander*, No. 2009-CA-002349-MR, 2011 WL 1085347 (Ky. Ct. App. Mar. 25, 2011), is neither inconsistent with this analysis nor changes the conclusion.  That Lamar has the right to remove the advertising display at the expiration of the term of the agreement says nothing about the nature of the transaction with respect to the real property on which the advertising is situated.  "The term trade fixture is used to 'describe property which a tenant has placed on rented real estate to advance the business for which it is leased and which may, as against the lessor, be removed at the end of the tenant's term.'" *Id*. at *2 (citation omitted).

Section 365(h)(1)(A) of the Code provides:

If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and . . . **(ii)** if the term of such lease has commenced, the lessee may retain its rights under such lease (including rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real

property for the balance of the term of such lease and for any renewal or extension of such rights to the extent that such rights are enforceable under applicable nonbankruptcy law. 11 U.S.C. § 365(h)(1)(A). The Court holds that the Sign Lease is a lease of non-residential real property under which the Debtor is the lessor; thus, upon rejection, Lamar may elect to retain its rights under the rejected Sign Lease under § 365(h)(1)(A)(ii).

### Conclusion

There being no genuine issue as to any material fact, the Court will grant summary judgment to the Trustee by separate order with respect to his request for a judgment declaring the Sign Lease rejected, deny summary judgment to the Trustee with respect to his request for injunctive relief ordering Lamar to vacate the Debtors' premises, and grant summary judgment to Lamar.

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: Monday, September 08, 2014
(tnw)